IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| EDDIE AMOS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 324-086 |
| | ) | |
| WARDEN TOMMY BOWEN, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, incarcerated at Telfair State Prison in Helena, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this case brought pursuant to 42 U.S.C. § 1983, concerning events alleged to have taken place at Dodge State Prison ("DSP") in Chester, Georgia. Defendant filed a pre-answer motion to dismiss, (doc. no. 23), which Plaintiff opposes, (doc. nos. 26, 30).

## I.     BACKGROUND

### A.     Procedural History

Plaintiff named Defendant Warden Tommy Bowen, and because he is proceeding IFP, the Court screened his complaint. (See doc. nos. 1, 14.) The Court allowed Plaintiff's claim of deliberate indifference to health and safety to proceed against Defendant Bowen in his individual and supervisory capacities. (Id. at 2.) Defendant now moves to dismiss, arguing Plaintiff failed to exhaust administrative remedies prior to filing his complaint. (See doc. no. 23.)

On October 6, 2025, Plaintiff responded to Defendant's motion, arguing (1) the motion is a delay tactic, (2) Defendant did not contest Plaintiff's exhaustion of administrative remedies before September 2025, (3) Defendant did not file a responsive pleading, (4) grievance appeals containing more than one issue risk dismissal under relevant Georgia Department of Corrections ("GDC") policies, (5) he properly and timely filed and appealed two grievances before filing the instant action, and (6) he exhausted administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA") of 1997[1] and under Miller v. Tanner, 196 F.3d 1190 (11th Cir. 1999).[2]  (Doc. no. 26, pp. 1-4.)  Defendant's "Amended Reply" argues that Plaintiff's reliance on Miller is misplaced because (1) the facts contrast the instant case where the Miller court held the plaintiff exhausted administrative remedies even though he did not appeal the denial of his institutional-level grievance because the plaintiff received a memorandum terminating his right to appeal, and (2) the instant motion to dismiss is not based on Plaintiff's failure to appeal the denial of a grievance at the facility level as it was in Miller. (Doc. no. 31, pp. 2-3.)

## B.    Complaint Allegations

Plaintiff alleges the following facts in his complaint signed on November 27, 2024. (Doc. no. 1, p. 6.)  In early 2023, Plaintiff was an inmate at Dodge State Prison ("DSP"). (Id.) In March 2023, DSP kitchen staff served meat to inmates labeled "not for human consumption." (Id. at 5.)  The dishwasher in the prison was "nonfunctional," and as a result,

---

[1] 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted").

[2] Miller v. Tanner, 196 F.3d 1190 (11th Cir. 1999).  Plaintiff did not cite Miller in his original response, rather he included the corrected citation in his "amended response" to Defendant's motion to dismiss.  (Doc. no. 30.)  Plaintiff argues Miller is a controlling Eleventh Circuit case that shows he has exhausted his administrative remedies as set forth in his initial complaint.  (Doc. no. 30, p. 2.)

the food and water served to inmates was contaminated and unsafe to consume. (Id.) In or around April 2023, Plaintiff asked Defendant Warden Bowen if he knew the kitchen staff was serving meat labeled "not for human consumption," or if he knew he needed to order disposable cups and trays because the dishwasher was "nonfunctional." (Id. at 4-5.) Defendant replied in the negative, instructed Plaintiff, "don't eat it," and took no further action to protect inmates from food-borne illness. (Id.) Plaintiff contracted Hepatitis A from the unsafe food and unsanitary dishes as DSP. (Id. at 3, 5.) Plaintiff was not diagnosed with Hepatitis A until after he arrived at Calhoun State Prison ("CSP"). (Id.) Plaintiff does not have access to the names of the kitchen stewards and inmates working at the time who were witness to the incident. (Id. at 6.) Plaintiff requests monetary damages. (Id.)

Plaintiff did not grieve the unsafe food and unsanitary dishes while at DSP because he did not know that he had contracted Hepatitis A until after his transfer to CSP. (Id. at 3.) After Plaintiff was diagnosed with Hepatitis A, he filed Grievance Numbers 365271 and 362821 at CSP. (Id. at 3-4.) Plaintiff also appealed both grievances to the Central Office and both appeals were denied. (Id. at 4.)

### C.    Plaintiff's Relevant Grievance History

In support of the motion to dismiss, Defendant produced the declaration of Latasha Jackson, the current Grievance Coordinator at CSP. (See doc. no. 23-2, "Jackson Decl.") Ms. Jackson is familiar with the Grievance Standard Operating Procedure ("GSOP") and the practices of the GDC as to inmate grievances under that document. (Id. ¶ 3.) The GSOP "outlines the grievance procedure applicable to and utilized for inmates committed to the [GDC], including inmates at [DSP] and [CSP]." (Id.) Ms. Jackson is also familiar with the information and records maintained by the GDC and at CSP. (Id. ¶ 18.)

Ms. Jackson did not identify any grievances filed in 2023 and identified two grievances, Grievance Number 362821 and Grievance Number 365271 filed by Plaintiff in 2024 at CSP. (Id. ¶ 12; doc nos. 23-6, 23-7.)  Plaintiff was transferred out of DSP custody and to CSP on August 15, 2023.  (Jackson Decl. ¶ 14.)  Plaintiff submitted both grievances prior to December 10, 2024, (see Jackson Decl. ¶¶ 12, 16, 17), the date Plaintiff executed his original complaint, (doc. no. 1, p. 6).

In Grievance Number 362821, filed on January 10, 2024, Plaintiff stated he filed two requests under the Open Records Act, questioned why he has not received the requested copies of blood work results from blood draws in September 2023 and December 2023, explained that medical staff are "still asking [him] for blood as of this day," and asserted no follow up occurred to discuss his information.  (Jackson Decl. ¶ 16; doc. no. 23-6, p. 5.)  The grievance coordinator denied the grievance because Plaintiff and a consulting physician discussed the lab results on January 17, 2024, Plaintiff could schedule an appointment to view his medical records, and medical records are not subject to Open Records requests and must be approved by legal services and the warden.  (Id. at 6.)  Plaintiff appealed this decision, and on March 11, 2024, the warden denied the appeal because the Office of Health Services clinical staff concluded that the medical personnel handled the case appropriately and no further action was warranted.  (Id. at 1-4.)

In Grievance Number 365271, filed on March 13, 2024, Plaintiff recounted his symptoms related to contracting Hepatitis C and complained that medical staff did not inform him of the diagnoses.  (Jackson Decl. ¶ 17; doc. no. 23-7, p. 5.)  A doctor informed Plaintiff that he had "feces in [his] body" because of unsanitary food and water.  (Id.)  Plaintiff also alleged the food was contaminated with rats and roaches.  (Id.)  Plaintiff further complained

4

the medical staff attempted to hide his diagnoses and questioned why the staff "get bottled water but we drink contaminated water." (Id.)  The grievance coordinator denied the grievance because the investigation revealed Plaintiff met with consulting physicians, and there was no evidence to support Plaintiff's statements.  (Id. at 4-9.)  Plaintiff appealed this decision and clarified that he contracted Hepatitis A, not C, in March 2023.  (Id. at 3.)  On May 2, 2024, the Commissioner denied his appeal for including multiple issues in the same grievance, which was against policy.  (Id. at 1.)

## II.  DISCUSSION

### A.  The Legal Framework for Determining Exhaustion

Where, as here, a defendant has filed a motion to dismiss based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions.  First, the court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, the defendant's motion will be granted.  Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted)).  If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendant bearing the burden of proving that the plaintiff has failed to exhaust his administrative remedies.  Id.  Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted.  Id. Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes

so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In the Eleventh Circuit, "brought" as used in this section of the PLRA means "the filing or commencement of a lawsuit, not . . . its continuation." Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000) (*en banc*); see also Goebert v. Lee Cnty., 510 F.3d 1312, 1324 (11th Cir. 2007) ("The time the statute sets for determining whether exhaustion of administrative remedies has occurred is when the legal action is brought, because it is then that the exhaustion bar is to be applied."). Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). "The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case." McKeithen v. Jackson, 606 F. App'x 937, 939 (11th Cir. 2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83

6

(11th Cir. 2012) (*per curiam*) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)).  Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective."  Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326.  Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'"  Johnson, 418 F.3d at 1155, 1156.

The United States Supreme Court has identified three circumstances where administrative remedies are not available and therefore exhaustion "does not come into play": (1) prison officials refuse to follow established grievance policy; (2) the administrative process is so confusing or vague as to be "essentially unknowable"; and (3) prison officials prevent filing grievances through "machination, misrepresentation or intimidation."  Ross v. Blake, 578 U.S. 632, 643-44 (2016).  Here, Plaintiff makes no allegations or arguments under the scenarios outlined in Ross.  Plaintiff contends in the complaint that he was able to utilize the grievance procedure to file two grievances.  (Doc. nos. 23-6, 23-7.)

Furthermore, the PLRA also "requires proper exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93 (2006).  In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way.  Id. at 90 (internal quotation omitted).  If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he does not satisfy the exhaustion requirement.  Johnson, 418 F.3d at 1159.  The Eleventh Circuit has repeatedly ruled a prisoner plaintiff must *properly* use all available administrative steps available to satisfy the PLRA's exhaustion requirement. Varner v. Shepard, 11 F.4th 1252, 1260-61 (11th Cir. 2021) (collecting cases).

7

B.      The Administrative Grievance Procedure

As a part of the Jackson Declaration, Defendant provided a copy and explanation of the applicable Statewide Grievance Procedure, Policy Number ("PN") 227.02, which became effective on May 10, 2019. (Jackson Decl. ¶¶ 3-12; doc no. 23-3, pp. 1-34.)  The grievance procedure has two steps: (1) Original Grievance; and (2) Central Office Appeal.  PN 227.02 § IV(C).  The administrative remedies procedure commences with filing an Original Grievance via the Kiosk/Tablet or with a counselor.  Id. § IV(C)(1)(c) & (d).  The inmate has ten calendar days "from the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance."  Id. § IV(C)(1)(b).  The timeliness requirements of the administrative process may be waived upon a showing of good cause.  Id.  The grievance coordinator screens the grievance to determine whether to accept it for processing or recommend the Warden reject it.  Id. § IV(C)(1)(e)(i).  The grievance may be rejected, *inter alia*, if it raises one of the listed non-grievable issues, includes threats or insults, or raises more than one issue/incident.  Id. § IV(C)(1)(e)(ii).

The policy requires the Warden provide a response to the prisoner who filed the grievance within forty calendar days from submission of the original grievance; a onetime ten-calendar-day extension may be granted.  Id. § IV(C)(1)(f)(v).  If the grievance is rejected, or if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a Central Office Appeal.  Id. §§ IV(C)(1)(e)(v) & (C)(1)(f)(viii); § IV(C)(2).  The inmate has seven calendar days from the date he receives the Warden's response to the grievance to file a Central Office Appeal, but this time limit may be waived for good cause.  Id. § IV(C)(2)(b).  The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision

to the prisoner who filed the appeal.  Id. § IV(C)(2)(e).  If the Central Office Appeal results in a determination the original grievance should have been accepted by the facility and processed, the grievance will be returned to the facility for investigation, and the Warden has fifteen calendar days from receipt of the returned grievance to give a decision to the prisoner who filed the grievance.  Id. § IV(C)(2)(g).  The prisoner has seven calendar days from receipt of the Warden's second response to file a second Central Office Appeal.  (Id.)  Records of all grievances are to be maintained in a central database.  Id. §§ IV(C)(1)(f)(vii) & (D)(1); (see Jackson Decl. ¶ 18.)

      C.      **Plaintiff's Failure to Exhaust**

Plaintiff's complaint was filed on December 10, 2024.  (Doc. no. 1, p. 6.)  Plaintiff filed two grievances at CSP: Grievance Number 362821 submitted January 10, 2024, and Grievance Number 365271 submitted March 13, 2024.  (Doc. nos. 23-6, 23-7.)  Plaintiff appealed the decisions in both grievances.  (Id.)  Indeed, Plaintiff acknowledges in his complaint there is a grievance procedure at DSP; however, Plaintiff did not file any grievance at DSP.  (Doc. no. 1, p. 3.)  Instead, Plaintiff filed grievances at CSP after being transferred and claims he did not file a grievance at DSP because he learned that he had contracted Hepatitis A at DSP after his transfer to CSP.  (Id.)  Under step one of Turner, the Court takes Plaintiff's version of the facts as true, concludes dismissal is not appropriate, and moves to step two.  See Turner, 541 F.3d at 1082.

Under the second Turner step, the Court must make specific findings to resolve the factual disputes regarding exhaustion, and the Defendant has the burden to prove Plaintiff did not exhaust administrative remedies.  See Maldonado v. Baker Cnty. Sheriff's Off.,

23 F.4th 1299, 1307 (11th Cir. 2022). As explained below, the Court concludes Defendant carried the burden to show Plaintiff did not properly exhaust his administrative remedies.

Defendant has shown through the Jackson Declaration that Plaintiff did not submit any grievance concerning the issues in the instant lawsuit. (Jackson Decl. ¶¶ 13-17.) Ms. Jackson identified two grievances Plaintiff filed in 2024 but did not locate any grievances about the allegations raised in Plaintiff's complaint. (Id. ¶ 13.) Indeed, the Court's review of both grievances confirms they do not discuss the claims alleged in Plaintiff's complaint. First, Plaintiff filed Grievance Number 362821 on January 10, 2024, alleging he filed Open Records Act requests to obtain results from recent blood draws. (Doc. no. 23-6, p. 5.) This grievance entirely centers around the opens records request and never mentions the meat labeled not for human consumption, the faulty dishwasher, contaminated food or water, Plaintiff's conversation with Defendant about these issues, or Plaintiff's Hepatitis A. (See generally id.) Thus, it plainly does not concern the allegations raised in Plaintiff's complaint.

Plaintiff also submitted Grievance Number 365271 on March 13, 2024, alleging he had recently learned he had contracted Hepatitis C[3] from "the water and food [and] food trays," and he was experiencing medical issues like weight loss, kidney issues, head pains, and "feces in [his] body." (Doc. no. 23-7, p. 5.) He also complained about the water being contaminated, the food infested with rats and roaches, and prison staff being able to drink bottled water. (Id.) Although this grievance relates to his Hepatitis diagnosis and alleged problems with the food and water supply, it never alleges issues regarding food being labeled not for human consumption, a broken dishwasher, or unsanitary trays and cups, all of which Plaintiff discusses in his complaint. (Doc. no. 1, p. 5.) Rather, this grievance ties the contaminated

---

[3] Plaintiff explains he was actually diagnosed with Hepatitis A in his appeal. (Doc. no. 23-7, p. 3.)

food and his Hepatitis to rats and roaches, not the type of food given or a broken dishwasher. Nor does the grievance describe Plaintiff's efforts to raise these concerns with Defendant directly. (Id.) Perhaps most importantly, the grievance fails to mention DSP at all and appears to direct his criticisms at the operations of CSP, not DSP. Accordingly, this grievance does not involve the allegations giving rise to Plaintiff's complaint.

Therefore, because the substance of these two grievances shows Plaintiff never grieved the issues raised in his complaint, i.e., being served with food labeled not for human consumption, a broken dishwasher, unsanitary trays and cups, and complaining to Defendant about these issues, they cannot be used a basis for his exhaustion of administrative remedies. Therefore, because Plaintiff did not file any other grievances about the claims raised in the instant lawsuit, his claims are unexhausted. (Jackson Decl. ¶ 13.)

As discussed above, Grievance Number 362821 does not relate to the facts alleged in Plaintiff's complaint. Admittedly, Grievance Number 365271 presents a far closer call, as Plaintiff claims in this grievance he contracted Hepatitis because of contaminated water and food. However, even if the Court concluded Grievance Number 365271 concerned issues raised in Plaintiff's complaint, Plaintiff nonetheless failed to properly exhaust his administrative remedies because the grievance appeal was denied on procedural grounds.

Although it decided Plaintiff's original grievance on the merits, the prison explicitly relied on multiple grieved issues as its reason for denying the grievance on the appeal level. (Jackson Decl. ¶ 17 & doc. no. 23-7, p. 1.) The appeal denial specifically explains, "Policy states that the complaint on the grievance form must be a single issue/incident. You have noted more than one issue. In accordance with policy, this grievance is denied." (Doc. no. 23-7, p. 1.) Accordingly, Calhoun State Prison did not waive its procedural objections, and the

11

exhaustion defense is thus available. See Glenn v. Smith, 706 F. App'x 561, 564 (11th Cir. 2017) (*per curiam*) (concluding exhaustion defense was available despite original grievance being denied on merits because "at the 'final stage' of the grievance process—the appeals stage—the prison denied the grievance based on timeliness"); Grant v. Ward, No. 5:22-CV-396, 2025 WL 1727966, at *6 n.10 (M.D. Ga. June 20, 2025) (finding "Defendant's exhaustion defense is not waived because Plaintiff's grievance was ultimately rejected as untimely by the Central Office"), *adopted by* 2025 WL 2463618 (M.D. Ga. Aug. 27, 2025); Villasenor v. Fuller, No. 5:21-CV-280, 2022 WL 22870942, at *4 (M.D. Ga. Feb. 22, 2022) (same), *adopted by* 2022 WL 22871580 (M.D. Ga. Mar. 30, 2022).

Next, the Jackson Declaration and supporting exhibits establish Plaintiff did not properly follow procedural rules in filing Grievance Number 365271. The grievance contains multiple issues, as it complains about Plaintiff belatedly being informed he had contracted Hepatitis, his medical symptoms, feces in his body from food and food trays, contaminated water, food infested with rats and roaches, and prison staff drinking bottled water. (Doc. no. 23-7, p. 5); see also PN 227.02 § IV(C)(1)(e)(ii). Accordingly, because he did not comply with the applicable procedural rules, Plaintiff did not properly exhaust his administrative remedies.

Therefore, in light of the evidence of record, the Court concludes Plaintiff did not exhaust administrative remedies because the exhaustion requirement is not satisfied if a prisoner fails to complete the administrative process or falls short of compliance with procedural rules. See Johnson, 418 F.3d at 1158-59 (emphasizing Congressional intent to allow prison officials first opportunity to address grievance issues and refusing to allow untimely grievance to satisfy exhaustion requirement where prisoner "did not request leave to

file an untimely administrative grievance and did not assert good cause for his failure to file a timely grievance before he filed his federal complaint").

The Supreme Court has explained the rationale behind requiring "proper exhaustion" as follows:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

Woodford, 548 U.S. at 95. Similarly, here, Plaintiff should not be allowed to bypass the administrative process failing to grieve the allegations raised in his complaint and, as to Grievance Number 365271, abide by procedural rules.

To the extent Plaintiff's complaint allegations suggest he did not have the necessary knowledge of his medical condition to file a grievance, such an argument fails. The original grievance process was available to Plaintiff at DSP before his transfer to CSP, as well as at CSP, to grieve the issues of the instant lawsuit. (Jackson Decl., ¶ 15.) Even accepting his delayed knowledge of his Hepatitis, he could have filed a grievance out of time by establishing good cause for his delay. (Id.); see also PN § 227.02 § IV(C)(1)(b). However, Plaintiff did not file an out of time grievance or otherwise establish good cause, and thus he failed to properly exhaust his administrative remedies.

13

Therefore, based on the above discussion, the Court finds Defendant has met his burden to show Plaintiff did not satisfy the PLRA's exhaustion requirement prior to filing this lawsuit because his grievance was untimely.   Because Plaintiff did not properly exhaust his administrative remedies prior to initiating this case, the motion to dismiss should be granted. See Bryant, 530 F.3d at 1379; Johnson, 418 F.3d at 1158-59; see also Leal v. Georgia Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (*per curiam*) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted); Higginbottom, 223 F.3d at 1261.

## III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendant's motion to dismiss be **GRANTED**, (doc. no. 23), and this case be **DISMISSED** without prejudice and **CLOSED**.

SO REPORTED and RECOMMENDED this 2nd day of April, 2026, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

14